EVANGER'S CAT AND DOG FOOD       )
COMPANY, INC.,                   )
                                 )
           Plaintiff,            )      No. 17 C 09229
                                 )
    v.                           )      Judge Edmond E. Chang
                                 )
SUSAN THIXTON,                   )
                                 )
           Defendant.            )

## MEMORANDUM OPINION AND ORDER

Evanger's Cat and Dog Food Company has sued pet-food blogger Susan Thixton, bringing claims for libel *per se*, libel *per quod*, and commercial disparagement.[1] Evanger's also asserts claims under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* R.1, Compl.[2] Thixton has moved to dismiss the Complaint for failure to adequately state a claim.[3] Fed. R. Civ. P. 12(b)(6). R. 36, Mot. to Dismiss. For the reasons explained below, Thixton's motion to dismiss is granted in large part and denied in part.

---

[1]This Court has diversity jurisdiction over the case under 28 U.S.C. § 1332(a). Evanger's is a citizen of Illinois, Thixton is a citizen of Florida, and the amount in controversy plausibly exceeds $75,000.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

[3]Earlier in the case, Thixton moved to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), as well as failure to adequately state a claim, Fed. R. Civ. P. 12(b)(6). R. 13. The Rule 12(b)(6) aspect of the motion was terminated without prejudice to allow the parties to complete jurisdictional discovery. *See Evanger's Cat and Dog Food Company, Inc. v. Thixton*, 2018 WL 3831505 (N.D. Ill. Aug. 13, 2018). Since then, Thixton has consented to personal jurisdiction, R. 33 ¶ 7, and now renews her Rule 12(b)(6) argument.

# I. Background

This dispute is about a series of three articles that Thixton published on her website, "truthaboutpetfood.com." For purposes of this motion, the Court accepts as true the factual allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Documents attached to a complaint are considered part of the complaint for all purposes. Fed. R. Civ. P. 10(c).

To provide some background, in early 2017, Evanger's discovered that one of its dog food lines, Hunk of Beef, had been contaminated with the toxin pentobarbital. Compl. ¶ 8. Several dogs had become sick after eating the product. *Id.* As a result, Evanger's alerted the Federal Food and Drug Administration (FDA) and issued a recall on its Hunk of Beef products. *Id.* According to Evanger's, Hunk of Beef was *not* an organic product, and neither the contamination issues nor the product recall affected any Evanger's organic products. *Id.*

A few months later, on June 8, 2017, Thixton published the first article at issue in this case. Compl. ¶ 10. The article was entitled "Waiting on Test Results, Another Possible Pentobarbital Poisoning Incident," and featured a pet owner whose cats had gotten sick after eating "Wild Calling" cat food. *Id.* In the article, Thixton noted that a Virginia state agency was investigating Wild Calling for possible pentobarbital contamination and that the investigators "were well aware of the recent history at Evanger's Pet Food." R. 1-1, Compl. Exh. A. When it was first posted online, the article included the statement: "A concerned consumer reports two sick cats to Virginia Department of Agriculture—Wild Calling Pet Food (made at Evanger's),

possible pentobarbital poisoning." Compl. ¶ 10. Although Evanger's Hunk of Beef dog food did suffer from the prior pentobarbital contamination, Evanger's was in fact *not* the manufacturer of the Wild Calling cat food under investigation. *Id*. ¶ 11. When this mistake was brought to Thixton's attention (by the Chief Operating Officer of Wild Calling), she deleted the phrase "made by Evanger's" from the online post. Compl. Exh. A. Thixton also issued a retraction: "The original post stated Wild Calling was manufactured at Evanger's Pet Food—this was incorrect. My error. My apologies for the error." *Id*. All of this happened within 31 minutes of the initial post.[4] R. 37-1, Def.'s Br., Exh. A. Nonetheless, Evanger's alleges that Thixton's initial error had already done its damage. Compl. ¶ 11.

Around four months later, on October 20, 2017, Thixton posted an article entitled "Evanger's Pet Food Caught Again." Compl. ¶ 12. This article asserted that Evanger's was holding its products out as certified organic by Oregon Tilth (an organic-food advocacy organization), even though Evanger's had actually "lost" its certification months ago. R. 1-2, Compl. Exh. B. Evanger's alleges that this statement was false because Evanger's voluntarily "surrendered"—as supposedly distinct from

---

[4]The 31-minutes timing is gleaned from the under-oath Declaration of Susan Thixton, which is attached to the motion to dismiss. The declaration includes its own exhibit as well, namely, a screenshot of the revision history of Thixton's website. Under the incorporation-by-reference doctrine, a court may consider documents attached to a motion to dismiss without converting the dismissal motion into a summary judgment motion if the documents are referred to in the complaint and are central to the claim. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Here, the "Wild Calling" article is central to Evanger's claims, and indeed Evanger's attaches the *revised* version of the article, which includes Thixton's retraction, to the Complaint. Because Evanger's has not challenged the authenticity of Thixton's revision-history exhibit, the Court will rely on the exhibit under the incorporation-by-reference doctrine.

"lost"—its organic certification. Compl. ¶ 17. According to Evanger's, the word "lost" falsely conveyed that "Evanger's certification had been lost by Evanger's due to its failure to comply with Oregon Tilth's organic certification standards." *Id.* ¶ 18. The article was accompanied by a screenshot from the Evanger's website showing a can of organic dog food overlaid with a caption reading, "Certified Organic by Oregon Tilth," and then the exclamation, "No…no it's not!" (with an arrow pointing from the caption to the can). Compl. Exh. B. Evanger's similarly alleges that this statement was false because at the time that the dog food in the photo was manufactured and labeled, Evanger's still had its organic certification, so there was nothing misleading about the certified organic label on that can. Compl. ¶ 18.

Evanger's swiftly responded to the "Caught Again" article by writing a letter to Thixton, claiming that her statements were "false and misleading" and demanding that she take down the post. R. 1-3, Compl. Exh. C. Thixton complied, but just a few days later, on October 23, 2017, she published a new article about Evanger's. Compl. ¶¶ 20-21. This third article was entitled "Not Defamation, Truth," and in it Thixton posted an excerpt of the letter she received from Evanger's attorneys and then set out her response. Compl. Exh. C. According to Evanger's, this article "republished, reiterated, and reinforced" the message in the "Caught Again" article. Compl. ¶ 25. In "Not Defamation," Thixton cited publicly available sources, including the Oregon Tilth website, an FDA Warning Letter to Evanger's, a website called "PetFoodIndustry.com," and an FDA Inspection Report. Compl. Exh. C. Thixton challenged Evanger's characterization of her statements as false and misleading. *Id.*

She stated that Evanger's organic certification "COULD HAVE been surrendered (lost) due to non-compliance." *Id.* Thixton then offered speculation (framed as rhetorical "is it possible" questions) about whether the FDA required Evanger's to close one of its manufacturing facilities due to conditions like "condensation dripping into open cans, peeling paint and mold, and lack of refrigerated storage facilities." *Id.* Thixton wrapped up the article by declaring that her intent was not to malign any particular pet food company, but rather to share the truth about pet food with consumers. *Id.* For its part, Evanger's alleges that Thixton "intentionally and maliciously juxtaposed disconnected events to portray melodramatically Evanger's as complicit in a massive consumer fraud relating to the health and safety of its products." Compl. ¶ 27.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Defamation (Counts 1-2)

Evanger's alleges that Thixton's articles were both defamatory *per se* and defamatory *per quod*. Thixton moves to dismiss the defamation claims under both theories of liability because (1) the statements at issue were not made with actual malice; (2) the statements are constitutionally protected opinions, as opposed to actionable facts; (3) the statements are capable of an innocent construction, which negates the defamation *per se* claim; and (4) Evanger's failed to adequately plead special damages for purposes of defamation *per quod*. R. 37, Def.'s Br. at 5-11.

Some basic principles of the law of defamation are well-established. To state a claim for defamation, "a plaintiff must allege that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Bd. of*

*Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (citing *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)) (cleaned up).[5] As a threshold matter, then, there can be no liability for statements that are substantially true. *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 676 (Ill. App. Ct. 2000) (cleaned up).

There are two avenues to liability for defamation. "If a statement's defamatory character is obvious and apparent on its face, it is considered defamation *per se*, with the law then presuming damages." *Bd. of Forensic Document Examiners,* 922 F.3d. at 831-32 (citing *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006)) (cleaned up). In Illinois, only certain categories of statements are considered defamatory *per se*, two of which are relevant here: (1) words implying that a person is unable to perform (or lacks integrity in performing) their employment duties; and (2) words imputing that a person lacks the ability to carry out that their trade, profession, or business. *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). Even if a statement falls within a defamatory *per se* category, the statement still is not actionable "if it is reasonably capable of an innocent construction." *Solaia*, 852 N.E.2d at 839. Illinois courts consider "the words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader." *Tuite*, 866 N.E.2d at 127 (cleaned up).

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

If a statement does not fall within one of the *per se* categories, the statement can still be actionable as defamation *per quod* if the plaintiff can point to extrinsic facts showing that the statement is defamatory. *Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207, 1221 (Ill. 1996). But in order to sustain a defamation *per quod* claim, the plaintiff must also plead special damages in accordance with the heightened pleading standard of Rule 9(g), which requires that special damages be specifically stated. *See* Fed. R. Civ. P. 9(g); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003).

Finally, "not all statements that doubt or impugn an individual's professional abilities are actionable. To the contrary, opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment." *Bd. of Forensic Document Examiners,* 922 F.3d at 832. Of course, "a statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17–21 (1990) and Illinois cases). To determine whether a statement is a fact or an opinion, the Illinois Supreme Court examines: (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content. *Solaia*, 852 N.E.2d at 840. "Context is key, as it matters not only what was

said, but who said it, where it was said, and the broader setting of the challenged statements." *Bd. of Forensic Document Examiners,* 922 F.3d at 839.

With these principles in mind, the Court now turns to the individual articles.

### 1. "Wild Calling" Article

The only statement at issue in the first article (the "Wild Calling" article) is this misattribution of Evanger's as the maker of Wild Calling: "A concerned consumer reports two sick cats to Virginia Department of Agriculture—Wild Calling Pet Food (*made at Evanger's*), possible pentobarbital poisoning." Compl. ¶ 10 (emphasis added). Evanger's was in fact not the manufacturer of Wild Calling, and Thixton does not dispute that the statement was false.

Evanger's argues that the statement is of the type that qualifies for one of the defamation *per se* categories. Compl. ¶ 29. Evanger's is right, and Thixton does not really dispute the point in her opening brief. The article falsely asserted that Evanger's manufactured a pet-food product that not only made two cats sick, but was also under regulatory investigation for possible pentobarbital contamination. Compl. Exh. A. This false statement directly impugns Evanger's ability to perform in its business (the manufacture and sale of pet food) by asserting that the company produced food that made pets ill. The defamatory nature of the statement here is straightforward—an accusation that a pet food company manufactured potentially tainted pet food would harm the company's professional reputation. Nor is the statement susceptible to an innocent construction. There is no reasonable alternative

reading of "Wild Calling (made at Evanger's)," other than to say that Wild Calling was made at Evanger's.[6]

Thixton argues that the defamation claim should nonetheless fail because Evanger's, as a limited purpose public figure, was required to plead actual malice.[7] R. 42, Def.'s Reply Br. at 3. Unfortunately, Thixton waited until the reply brief to present this argument, so the argument has been forfeited (at least during this initial pleading stage).[8] *See Frazee v. Berryhill*, 733 Fed. App'x. 831, 834 (7th Cir. 2018). In

_____

[6]Thixton does try to argue that the "Wild Calling" article does not fall within any defamation *per se* category and that the statement is subject to an innocent construction. Def.'s Reply Br. at 5-6. But those arguments were made only in the reply brief, so they have been forfeited. Even if not forfeited, however, the arguments are wrong. For instance, Thixton argues that the "Wild Calling" statement "is not an actionable attack on Evanger's integrity or ability professionally" because the article "did not state that Wild Calling pet food was found to be contaminated by pentobarbital or that Evanger's was responsible for any violation of law." *Id.* But as discussed above, the allegation that Evanger's manufactured pet food that made two cats ill is defamatory on its face. Similarly, Thixton argues that the article was subject to an innocent construction because "[t]he identification of Evanger's as the manufacturer of Wild Calling was buried—*as a parenthetical*—within the overall [article]." *Id.* (emphasis in original). But just because the phrase was "buried" does not mean that the phrase itself was subject to an innocent construction.

[7]When the subject of an allegedly defamatory statement is a public figure, the plaintiff must plead that the defendant acted with "actual malice—that is, with knowledge that the statement was false, or with reckless disregard of whether it was false or not." *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Under Illinois law, a plaintiff is a limited purpose public figure if (1) a public controversy exists, (2) the plaintiff took some voluntary act to try to influence the resolution of the controversy, and (3) the alleged defamation relates to the plaintiff's participation in the public controversy. *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1176 (Ill. App. Ct. 2014). Thixton argues that Evanger's was a limited purpose public figure because "[i]n response to growing scrutiny, Evanger's steadfastly maintained that the company's dog food did not get any animals sick." Def.'s Reply Br. at 4. Again, however, Thixton did not raise this argument until her reply brief, so it is forfeited.

[8]In the opening brief, Thixton did argue that Evanger's was required to plead actual malice, but her rationale is that speech about matters of "public concern" is protected by a conditional privilege. Def.'s Br. at 5. As Evanger's correctly points out, though, that is not the correct standard under Illinois law. Speech is not automatically privileged just because it touches on a matter of public concern. Rather, courts also look to a plaintiff's status as a public or private figure to determine whether the actual malice standard applies. *Imperial*

light of Thixton's forfeiture of the actual-malice standard (at the pleading stage), Evanger's only needs to plead that Thixton acted negligently in making the defamatory statement. *Kuwik v. Starmark Star Marketing & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). Evanger's alleges that "Thixton knew, or deliberately and recklessly failed to verify" the fact that Evanger's did not manufacture Wild Calling cat food. Compl. ¶ 30. That allegation goes beyond negligence. Thixton's motion to dismiss only addresses actual malice and fails to offer any argument on negligence (only a footnote in the reply brief addresses the point, Def.'s Reply Br. at 10 n.11, so that too is forfeited). In these circumstances, Evanger's has met the pleading standard for negligence.

Evanger's thus has adequately stated a claim for defamation *per se* premised on the "Wild Calling" article. Because the defamation *per se* claim survives for this article, there is no need to evaluate Thixton's argument that Evanger's failed to plead special damages for purposes of defamation *per quod* as to the "Wild Calling" article.

## 2. "Caught Again" Article

In contrast to the "Wild Calling" article, the statements in Thixton's second article ("Caught Again") are not actionable because they do not contain any false allegations of *fact*. The first statement targeted by Evanger's is the headline itself: "Caught Again." Compl. ¶ 18. But as a standalone statement, "Caught Again" is neither precise nor verifiable, and it lacks the specificity necessary to be deemed a false factual assertion. Even when examined in context with the other statements in

---

*Apparel*, 882 N.E.2d at 1020. Because Thixton failed to articulate any *valid* reasons for why actual malice should apply in this case, the argument is forfeited.

the article, "Caught Again" cannot plausibly be read as any sort of objectively verifiable fact. It is a vague, hyperbolic headline—not a false factual allegation.

Moving down the page, Evanger's next points to the photograph and caption at the top of the "Caught Again" article. Compl. ¶ 18. Here it is:



Evanger's alleges that the caption—"Certified Organic by Organic Tilth" followed by "No…no it's not!"—is defamatory. *Id.* According to Evanger's, the product featured in the photo was actually manufactured and labeled at a point in time when Evanger's *did* still have organic certification, so as it relates to the particular can of food in the photo, the "No…no it's not!" statement is false. *Id.* This reading attributes much more factual precision to the statement than it can plausibly bear. First, what is the "it" in "No…no it's not"? Does "it" refer to the individual dog-food can in the photo at the time that the can was first labeled? Or does "it" refer more generally to Evanger's organic pet food as it was still publicized online by Evanger's in October 2017? Indeed, Evanger's does not dispute that the company did not have organic-food certification when the article was published, nor does it dispute that the photo of the certified-

organic can was displayed on its very own website at a point in time when Evanger's did not have organic certification (the article itself conveys that the photo is from Evanger's website). So Thixton presented her *interpretation* of Evanger's publicly available photo, which still bore the no-longer applicable organic-certification label. That interpretation is not a factual assertion subject to a defamation claim. *Haynes*, 8 F.3d at 1227 ("If it is plain that the speaker is expressing…an interpretation…rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.") (cleaned up).

This brings us to the main source of contention from the "Caught Again" article, that is, the statement that "Evanger's Pet Food Company *lost* its organic certification from Oregon Tilth August 16, 2017." Compl. ¶¶ 14-18 (emphasis added). Again, Evanger's does not dispute the underlying fact that it did not have organic certification as of that date. Rather, what Evanger's takes issue with is Thixton's choice of the word "lost." According to Evanger's, what really happened was that Evanger's "voluntarily surrendered" its certification. *Id.* ¶ 18. To Evanger's way of thinking, the word "lost" falsely conveys an element of involuntariness, as in "Evanger's certification had been lost by Evanger's due to its failure to comply with Oregon Tilth's organic certification standards." *Id.*

In order to evaluate Evanger's argument, it is necessary to put the statement in context. The two sentences directly before the statement read: "Plainly stated on the Evanger's website are the words *'Certified by Oregon Tilth.'* But…the Oregon Tilth website plainly states the Evanger's pet food certification was *'Surrendered'* in

August 2017." Compl. Exh. B (emphases in original). Thixton places the word "surrendered" (which aligns with Evanger's preferred word) in quotes and italics. Then comes the disputed statement: "Thanks to one of you wonderful consumers out there, we learn that the Evanger's Pet Food company lost their organic certification from Oregon Tilth August 16, 2017." *Id.* Thixton then uses the word "surrendered" two more times in the article. *Id.* The word "lost" does not appear anywhere beyond the statement at issue.

Based on this context, Thixton's use of the word "lost" is merely an opinionated way of saying that Evanger's no longer had organic certification. Consider that the Oregon Tilth website itself, as quoted in the article (and not disputed by Evanger's), explicitly uses the word "surrendered"—not the phrase "voluntarily surrendered." Compl. Exh. B. At the risk of stating the obvious, the phrase "voluntarily surrender" certainly conveys a sense of voluntariness, but the same is not necessarily true of the word "surrender" by itself. There is even an oxymoronic quality to the phrase "voluntarily surrender." Take this example: a judge hears oral arguments on a dismissal motion and then takes the motion under advisement. The plaintiff voluntarily dismisses the case the next day. Would the defense lawyer be *factually* wrong to say that the plaintiff "lost" the case? The point is that it is not clear what "surrender" means—as a *factual* assertion—as it appears on the Oregon Tilth website, and as quoted by Thixton. So Thixton's use of the word "lost" in the very next sentence is an interpretation of the word "surrendered" from the Oregon Tilth website. Both of those words are imprecise as statements of *fact*.

What's more, when read in its entirety, the article does not use the word "lost" to convey anything more than Thixton's interpretation of "surrendered." Specifically, the article argues that Evanger's is misleading its customers by featuring photos of certified organic pet food on its website despite not having organic certification—and that point remains the same whether or not the absence of the certification was voluntary or involuntary. Indeed, nowhere in the article does Thixton ever mention the *reason* why Evanger's no longer had the organic certification. All in all, Thixton's use of the word "lost" is a constitutionally protected expression of opinion.

### 3. "Not Defamation" Article

Turning to the third and final article (entitled, "Not Defamation, Truth"), Evanger's alleges that this article, posted only a few days after the "Caught Again" article, "republished, reiterated, and reinforced" Thixton's message in that previous article, namely, "that Evanger's had not voluntarily surrendered its Oregon Tilth organic certification, but rather had lost its certification because Evanger's was in peril with Oregon Tilth for having violated health and safety standards." Compl. ¶¶ 24-25.

Compared to the "Caught Again" article, it is even clearer that the statements in "Not Defamation" are protected expressions of opinion, not actionable factual assertions. Consider first the overall context of the article: it appears on a personal website run by an individual who does not claim to have insider knowledge into the organic certification process or government safety inspections. Compl. Exh. C. In fact, Thixton explicitly disclaims any behind-the-scenes knowledge, warning that her

information has *not* been verified by the FDA, Oregon Tilth, or Evanger's itself, and that none of these groups have responded to her requests for information. *Id.* Instead, the text of the article demonstrates that Thixton based her statements on extensive online research drawn mostly from publicly available sources--specifically, the Oregon Tilth website, a website called PetFoodIndustry.com, an FDA Warning Letter to Evanger's, and FDA inspection reports. *Id.* Thixton also cites an email conversation between the owner of Evanger's and a consumer. *Id.*

According to Evanger's, these statements were "crafted to add verisimilitude to Thixton's assertion that a causal connection existed between alleged defaults by Evanger's and the loss of its Oregon Tilth certification." Compl. ¶ 27. In essence, then, Evanger's really is arguing that it is defamatory for Thixton to bolster her speculation with true facts. After all, Evanger's does not dispute the authenticity or veracity of any of Thixton's sources or underlying information (like the information in the FDA Warning Letter or Inspection Report). Rather, Evanger's only takes issue with the conclusions that Thixton draws from those undisputed facts. Those conclusions are just speculation (as the article itself points out), and so they are constitutionally protected expressions of opinion.

For instance, Evanger's targets the following statement: "In other words, it appears that organic certifications can be '*surrendered*' due to non-compliance, thus certification **can be** surrendered by a company that actually is NOT '*in good standing with Oregon Tilth.*' … My statement that Evanger's '*lost*' its organic certification was not '*patently false.*'" Compl. ¶ 25 (emphases in original). Nothing in this statement is

defamatory. Again, Thixton is presenting her own research from the Oregon Tilth website. She posts the relevant links and content (none of which Evanger's alleges is untrue), and then she provides her interpretation of that content, as evidenced by her use of the words "it appears." Indeed, Thixton's emphasis (via bold face) on the words "**can be**" suggests to the reader that she is merely providing a *possible* interpretation of the organic certification process; she does not purport to present the definitive truth. *Hadley v. Doe*, 12 N.E.3d 75, 91 (Ill. App. 2014) ("When the facts underlying a statement of opinion are disclosed, readers will understand that they are getting the author's interpretation of those facts and are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts.").

Next, Evanger's alleges that the following statement is defamatory: "Thus again, though not confirmed by FDA, Evanger's or Oregon Tilth, Evanger's organic certification of the Wheeling facility COULD HAVE been surrendered (lost) due to non-compliance." Compl. ¶ 26. According to Evanger's, this statement "was plainly intended to communicate" that "*in fact* Evanger's lost its certification because of non-compliance with Oregon Tilth standards." *Id.* (emphasis in original). But nothing in the statement says that Thixton is attempting to present a precise or verifiable *fact*. To the contrary, Thixton warned that her speculation has *not* been verified by the FDA, Evanger's, or Oregon Tilth. Compl. Exh. C. And on top of that, in the very next sentence in the article—a sentence that Evanger's omitted from the Complaint— Thixton specifically admits that she is speculating: "Until FDA releases details of their investigation, until Evanger's releases details as to why the Wheeling plant

closed and why the organic certification was '*surrendered*'—we all have no option but to speculate." *Id*. Evanger's is correct that simply including "thinly veiled verbiage" like "could have" and "speculate" will not automatically protect an actionable false fact from liability. Compl. ¶ 26; *see Milkovich,* 497 U.S. at 18 (defendant cannot avoid liability for defamation simply by prefacing defamatory factual assertions with the words "I think" or "In my opinion"). But that is not what Thixton's article does. When the statement is viewed in context, it is clear that Thixton is offering an interpretation based not on insider knowledge of the certification process and what happened to Evanger's certification, but purely on her own investigation of publicly available sources. *Antonacci v. Seyfarth Shaw, LLP*, 39 N.E.3d 225, 238 (Ill. App. 2015) ("A representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact.") (cleaned up). There is no plausible way to read Thixton's statement as a definitive statement of fact.

Evanger's next alleges that Thixton's statement that it was her "intention to share violations of law in pet food with consumers" was defamatory, as well as her statement that "[w]ith certainty, Evanger's Pet Food is not the only violator in pet food. Unfortunately, your pet food is not the only adulterated pet food that has killed a pet." Compl. ¶ 27. These statements too do not have sufficient factual content and precision to qualify as defamatory. Remember that Evanger's did have to initiate a prior recall of pet food that was contaminated with pentobarbital. *Id*. ¶ 8. So the use of the word "violator" does not have a precise and readily understood *factual* meaning in the context of Thixton's article. It could refer to a violation of the law, a violation

of FDA safety standards, a violation of Oregon Tilth certification standards, or even a violation of customers' trust. At the level of generality used in the article, these statements do not assert facts that can be subject to a suit for defamation.

Finally, Evanger's takes issue with the following statement: "I am aware of multiple (documented) instances where Evanger's communications to pet owners and pet retailers that included '*numerous inaccuracies that rise to the level of actionable, per se defamation*.'" Compl. ¶ 28 (emphasis in original). According to Evanger's, this statement implied "the existence of undisclosed false defamatory facts." *Id.* But looking at the statement in context, the very next sentence says, "Consumers and retailers have shared with me for years communications between Evanger's Pet Food where my name and this website's name was discussed in a very disrespectful (defaming) light." Compl. Exh. C. Again, there are no specific factual accusations levelled against Evanger's in those statements. At most, Thixton is implying that she has evidence that Evanger's discussed her name and website in an inaccurate and disrespectful light. *Id.* But what evidence? What specifically did Evanger's do or say? There simply is not enough of a precise factual statement to be actionable. High-level, conclusory accusations like "actionable, per se defamation" and "disrespectful (defaming)" are nothing more than broad opinions or legal conclusions. These sentiments are not verifiable as *facts*. Putting aside the oddity of Evanger's theory— which essentially takes the form of "you accusing me of defamation is itself defamation"— Thixton's statement is a rhetorical flourish that is devoid of factual

content. At the end of day, the "Not Defamation" article does not contain any actionable assertions of fact.

## B. Commercial Disparagement (Counts 3-5)

Evanger's also brings a common law claim for commercial disparagement, as well as statutory claims under the Illinois Uniform Deceptive Trade Practices Act (Deceptive Practices Act) and the Illinois Consumer Fraud and Business Practices Act (Consumer Fraud Act). All three claims rely on the same theory—that Thixton's statements "directly impugned the safety and quality of Evanger's pet foods." Compl. ¶ 40. Thixton moves to dismiss all three claims.

The common law tort of commercial disparagement is "subject to the same analysis" as statutory commercial disparagement under the Deceptive Practices Act. *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 939 (N.D. Ill. 2019) (cleaned up). Under Section 2(8) of the Deceptive Practices Act, "a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person … disparages the goods, services, or business of another by false or misleading representation of fact." 815 ILCS 510/2(8). Because Section 2(8) codifies common law commercial disparagement, both claims require a plaintiff to allege that a defendant "published untrue or misleading statements that disparaged the plaintiff's goods or services." *Maui Jim*, 386 F. Supp. at 939. Like defamation claims, commercial disparagement claims must be based on false statements of fact and cannot be based on expressions of opinion. *Freiburger v.*

*Timmerman*, 2016 WL 4493448, at *15 (N.D. Ill. Aug. 26, 2016) (citing *Soderlund Bros. v. Carrier Corp.*, 663 N.E.2d 1, 11 (Ill. App. 1995)).

In advancing the commercial disparagement claims, Evanger's first alleges that Thixton falsely conveyed "that Evanger's products certified by Oregon Tilth as organic were not in fact certified by Oregon Tilth as organic … impugning the quality of Evanger's products." Compl. ¶ 40. Although Evanger's does not identify exactly which statements are disparaging, to the extent that Evanger's is referring to statements in the "Caught Again" or "Not Defamation" articles, the commercial disparagement and Deceptive Practices Act claims must fail because neither article contains any actionable false allegations of fact, as detailed earlier in this Opinion.

Evanger's also alleges that Thixton falsely communicated "that safety concerns regarding Evanger's products extended *beyond* the limited production runs of its Hunk of Beef product to other Evanger's products, not subject to the recall, and not in any way compromised in their safety or quality." Compl. ¶ 40. Again, Evanger's does not identify exactly which statements are commercially disparaging, so to the extent that Evanger's is referring to the "Caught Again" or "Not Defamation" articles, the disparagement claims fail for the reasons discussed earlier.

On the other hand, the "Wild Calling" article is actionable (but only under the Deceptive Practices Act, as explained below), just as it is for the defamation claim. Thixton argues that the "Wild Calling" statements do not count as commercial disparagement because the "remarks were evidently made about the quality of *another* pet food manufacturer's product, not Evanger's." Def.'s Br. at 11 n.12

(emphasis in original). But it is the false *association* of Evanger's with Wild Calling that Evanger's takes issue with. So even though Thixton is right in noting that the article is really commenting on the quality of Wild Calling products, by attributing those Wild Calling products to Evanger's, the article essentially states that Evanger's "made" an unsafe product.

Although the "Wild Calling" statement is actionable, there is a crucial distinction between the Deceptive Practices Act claim and common law commercial disparagement. There does not appear to be any statutory requirement that a Deceptive Practices Act plaintiff plead special damages, and the only challenge Thixton raises to the statutory claim is that the remedy sought—injunctive relief—is an unconstitutional prior restraint on speech. Def.'s Br. at 12. (With a fuller adversarial presentation, the Court would be required to decide the special-damages issue.) But as Evanger's correctly notes, Thixton's argument is applicable only at the relief stage of the proceedings (that is, how to craft an injunction consistent with the First Amendment) and does not actually address whether Evanger's has satisfied the elements required to state a claim under the Deceptive Practices Act. R. 39, Pl.'s Resp. Br. at 16. Thus, this statutory claim premised on the "Wild Calling" article survives the motion to dismiss.

In contrast, Evanger's common law commercial disparagement claim must fail. In her opening brief, Thixton argued that commercial disparagement claims are subject to an additional special damages requirement. Def.'s Br. at 9. Evanger's did not respond to that argument, so it has apparently conceded it at this stage of the

case.[9] On that basis, the Court will assume for purposes of this motion that special damages are a required element of common law commercial disparagement. So the heightened pleading standard of Rule 9(g) applies. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated"); *Muzikowski*, 322 F.3d at 927. Here, Evanger's alleges that it "has suffered special damages in the form of lost sales of its various pet food products as a direct and proximate result of Thixton's defamatory statements." Compl. ¶ 48. In support of the lost-sales allegation, Evanger's contends that "specific documented communications from retail sales stores distributing Evanger's products in which operators of the stores communicated to Evanger's that sales of Evanger's products were declining as a direct result of the false and defamatory Thixton publications." *Id*. But this theory of special damages is simply not plausible when it comes to the sole remaining disparagement claim: the "Wild Calling" article. As detailed earlier, the defamatory statement in the article— that the Wild Calling food was "made by Evanger's"—was deleted only 31 minutes after Thixton first published it. Def.'s Br. Exh. A. Evanger's does not plead any facts

---

[9]Although the Court assumes (in light of Evanger's lack of a response) that special damages are required to state a claim for commercial disparagement, the case law is not entirely clear on the point. *See Cohabaco Cigar Co. v. US Tobacco Co.,* 1998 WL 773696, at *10 (N.D. Ill. Oct. 30, 1998) (noting that "it is unclear whether Illinois law requires a plaintiff claiming commercial disparagement to allege and prove special damages") (cleaned up). *See also Navistar Intern. Transp. Corp. v. Freightliner Corp.,* 1999 WL 569577, at *4 (N.D. Ill. Jul. 30, 1999) ("Under Illinois law, to recover money damages under a commercial disparagement claim, plaintiff must prove that the disparaging speech proximately caused special damages.") (cleaned up); *World Kitchen, LLC v. American Ceramic Soc.,* 2013 WL 5346424 (N.D. Ill. Sept. 19, 2013) (allowing a commercial disparagement to survive the motion to dismiss stage without any analysis of special damages). The Illinois Supreme Court has not definitively ruled on the issue. The Restatement (Second) of Torts refers to commercial disparagement as trade libel, and takes the position that "proof of special harm is required in all cases." Restatement (Second) of Torts § 626 cmt. b (1977).

alleging that any consumers even saw the post within the first 31 minutes of publication, nor does Evanger's allege that any lost sales were specifically the result of the false statement in the "Wild Calling" article, as distinct from either of the two later articles. This failure to plausibly plead special damages is fatal to Evanger's common law commercial disparagement claim.

Finally, turning to the Consumer Fraud Act claim, Thixton correctly notes that Evanger's failed to plead facts supporting several elements of that statutory claim. Def.'s Br. at 12-13. To state a cause of action under the Consumer Fraud Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)). Because Evanger's has not disputed Thixton's argument on the Consumer Fraud Act, the Court can only assume that Evanger's has chosen to drop the claim.[10] It is dismissed.

## IV. Conclusion

Ultimately, Evanger's has identified only one actionable false statement of fact—Thixton's mistaken identification of Evanger's as the manufacturer of Wild Calling cat food. For that statement only, the defamation *per se* (Count 1) and the

---

[10]When parties drop a claim, an explicit disclaimer is the more professional and forthright way to do so, rather than just silently slinking away from the claim. Courts are forced to double-check and triple-check briefs in a time-wasting effort to make sure that the court is not missing something.

Deceptive Practices Act (Count 4) claims survive. Beyond that, the targeted statements are constitutionally protected opinions and thus are not actionable for purposes of either defamation or commercial disparagement. All of Evanger's other claims are dismissed. In light of the grounds for the dismissal, those claims are dismissed with prejudice because they do not appear to be fixable via amended allegations (but Evanger's may move to reconsider if it believes that there is a way to salvage those claims).

Moving forward, the Court notes that the remaining claim is limited not only in scope (the Wild Calling article) but time as well, considering that Thixton removed the actionable statement at issue after 31 minutes online. The parties shall confer on the discovery going forward, which might be very limited. The status hearing of October 3, 2019 remains as previously scheduled, although the parties may jointly contact the courtroom deputy if they wish to postpone it for a few weeks.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 27, 2019